**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ELIZABETH SMITH

              Plaintiff,

                                            Case No. 15-12756
v.                                          Hon. Terrence G. Berg

CONVERGENT OUTSOURCING, INC.,

              Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 10)**

**I.   INTRODUCTION**

    This is a debt collection case. Defendant Convergent Outsourcing moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the ground that its inclusion in a debt collection letter of the sentence "We cannot sue to collect this debt and providing a partial payment may revive the creditor's ability to sue to collect the balance" means its letter did not violate the Fair Debt Collection Practices Act. Because even the least sophisticated consumer would not be misled by the use of the words "settle" and "may" in the context of this letter, Defendant's motion as to Count I is **GRANTED**. But because Defendant did not argue that it was entitled to summary judgment on Count II (violation of the Michigan Occupational Code) and Count III (violation of the Michigan Collection Practices Act), Defendant's motion as to Counts II and III is **DENIED,** and these claims are **REMANDED** to state court.

## II. FACTUAL AND PROCEDURAL HISTORY

Plaintiff Elizabeth Smith is a former customer of Sprint who allegedly failed to pay Sprint $798.89. Defendant Convergent Outsourcing is a debt collector who has been seeking to collect this debt since 2012. On April 2, 2015, Defendant sent Plaintiff the letter that prompted this lawsuit. The letter was a single page, double sided. On the front, Defendant made a settlement offer of $279.61:

> Dear Elizabeth Smith:
>
> This notice is being sent to you by a collection agency. The records of Sprint show that your account has a past due balance of $ 798.89.
>
> Our client has advised us that they are willing to offer you a reduced settlement amount of your total balance due to settle your past due balance. The full settlement amount or first payment of your selected payment program must be received in our office within 45 days of this letter. If you are interested in taking advantage of this settlement opportunity, please complete the below information and remit with your payment.
>
> Your settlement amount would be $ 279.61 to clear this account in full. This amount represents a 65% savings of your total balance. We are not obligated to make this offer to you in the future. Even if you are unable to take advantage of this offer, please contact us to see what terms can be worked out on your account.
>
> Payment of a settlement amount does not make you eligible for reinstatement of Sprint services. To be eligible to reapply for service, your entire balance must be paid. Upon payment of the entire balance, you may apply for new service with Sprint. You may be subject to a security deposit on each new unit you establish.
>
> Sincerely,
>
> Convergent Outsourcing, Inc.
>
> THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS COMMUNICATION IS FROM A DEBT COLLECTOR.
>
> NOTICE: PLEASE SEE REVERSE SIDE FOR IMPORTANT CONSUMER INFORMATION.

On the back, Defendant said it would assume the debt was valid unless Plaintiff contested the debt, and that Defendant could not itself sue on the debt:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume the debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

> We cannot sue to collect this debt and providing a partial payment may revive the creditor's ability to sue to collect the balance.

At the time of the letter, Plaintiff believed she owed Sprint no money. She claims that she last paid money toward the alleged debt in 2006. Plaintiff interpreted the letter as stating that the alleged debt was enforceable in court—that Sprint or Defendant could sue her for the debt. Plaintiff alleges that under MCL §600.5807(8), however, the six-year statute of limitations had run and that neither Sprint nor Defendant could sue her for the debt. Thus, rather than accepting Defendant's offer, Plaintiff sued Defendant in the 35th District Court of Michigan for violation of the Fair Debt Collection Practices Act, the Michigan Occupational Code, and the Michigan Collection Practices Act. Defendant removed the case to this Court, and now moves for summary judgment.

## III. ANALYSIS

### A. Standard of Review

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

"As the moving parties, the defendants have the initial burden to show that there is an absence of evidence to support [plaintiff's] case." *Selhv v. Caruso*, 734 F.3d 554 (6th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party "may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012) (citing *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir.2009)).

### B. Discussion

Plaintiff alleges violations of the: Fair Debt Collection Practices Act; Michigan Occupational Code; and Michigan Collection Practices Act. Dkt. 1. Defendant advances no argument in its motion or brief that it is entitled to summary judgment on Plaintiff's Michigan Occupational Code claim (Count II) or Michigan Collection Practices Act claim (Count III). The Court deems any such argument waived, so Defendant's motion as to Counts II and III is **DENIED**. Thus, all that remains for this Court to consider is whether Defendant is entitled to summary judgment on Plaintiff's Fair Debt Collection Practices Act claim (Count I).

1. *Fair Debt Collection Practices Act Violation*

The FDCPA bans all "false, deceptive, or misleading" debt-collection practices. 15 U.S.C. § 1692e. The inclusion of the term "misleading" means that even a true

4

statement may violate the Act, so long as it creates a misleading impression. *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 396 (6th Cir. 2015). The Act does not just protect shrewd consumers, it protects all consumers—even the gullible. *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 509 (6th Cir. 2007). And the Act protects these consumers from practices "that would mislead the 'reasonable unsophisticated consumer,' one with some level of understanding and one willing to read the document with some care. *Buchanan*, 776 F.3d at 396 (citing *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 327 (6th Cir. 2012)). That Act's protection has limits, though; dunning letters (that is, debt collection notification letters) do not violate the Act if they are misleading only when the reader applies a "bizarre," "idiosyncratic," or "nonsensical" reading. *Lamar*, 503 F.3d at 510, 514.

Here, Defendant argues that Plaintiff has not shown that the letter was misleading. Dkt. 10, Pg. ID 61. Defendant submits that the letter, read in its entirety, affirmatively discloses that Defendant cannot sue Plaintiff to collect the debt and that a partial payment might revive Sprint's ability to file a lawsuit. *Id.* Defendant then cites *Buchanan* to demonstrate both what type of letter might have been inappropriate and how Defendant drafted its letter to avoid making the letter misleading. *Id.* In *Buchanan*, the Sixth Circuit held that a plaintiff adequately stated a FDCPA claim under the theory that a dunning letter she received was misleading because that letter used the phrase "settlement offer" in connection with a time barred debt, which might have falsely implied that the creditor could sue to recover the debt. 776 F.3d at 399-400. Defendant emphasizes that the letter in *Buchanan*

5

contained no affirmative disclosures that the debt was not legally enforceable and that a partial payment could restart the statute of limitations to sue for the debt, whereas Defendant included both disclosures in its letter to ensure that the letter would not mislead Plaintiff. Dkt. 10, Pg. IDs 61-63. Thus, Defendant submits that its letter was not misleading, and that any claim that the letter was misleading must be based on a bizarre, idiosyncratic, or nonsensical interpretation of the letter's language. *Id.* at Pg. ID 62.

Plaintiff provides three arguments in response. First, Plaintiff cites *Buchanan*'s statement that "[g]enerally speaking, a jury should determine whether [a dunning] letter is deceptive and misleading," 776 F.3d at 397, for the proposition that the Court "must" deny Defendant's motion. Dkt. 12, Pg. ID 82. This response ignores the Sixth Circuit's use of the word "generally," and overlooks the posture of that case; the Sixth Circuit was reviewing a district court's order granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), not a summary judgment motion. *Buchanan*, 776 F.3d at 395. Indeed, in the very next paragraph the majority states that such a claim "may warrant discovery but be appropriate for summary judgment after that." *Id.* at 397. Plaintiff's argument lacks merit; *Buchanan* does not stand for the proposition that any time a plaintiff alleges that a dunning letter is misleading, the case automatically survives summary judgment.

Second, Plaintiff argues that Defendant's use of the phrase "Settlement Offer" and the words "settlement" and "settle" was misleading because it suggested that Defendant could sue Plaintiff to recover the debt. Dkt. 12, Pg. IDs 84-87. And third,

6

Plaintiff argues that Defendant's statement that a partial payment "may" revive Sprint's right to sue was misleading because a partial payment would "definitely" revive that right. *Id.* at Pg. IDs 87-89.

### a. "Settle" as misleading

Plaintiff argues that Defendant's use of the words "settlement" and "settle" implied that the underlying debt was enforceable in court, which was misleading because the statute of limitations to sue on the debt had run. Dkt. 12, Pg. ID 83. To support her position, Plaintiff cites *Buchanan* and its recognition that both formal and informal dictionaries contain definitions of "settle" that refer to concluding lawsuits. *Buchanan*, 776 F.3d at 399. Plaintiff accurately summarizes *Buchanan*, but incorrectly applies its reasoning to this case.

To begin, Plaintiff does not take into account the difference in posture between *Buchanan* and this case. *Buchanan* involved review of a district court's order dismissing the case for failure to state a claim under Rule 12(b)(6); this case has already passed that stage, and Defendant's motion is for summary judgment under Rule 56. In reversing the district court, the *Buchanan* majority gave the plaintiff an opportunity to conduct discovery and present evidence as to why the use of the word "settle" in the letter she received was in fact misleading. In *Buchanan*, the plaintiff sought to introduce expert testimony about consumers' attitudes toward, and their understanding of, time-barred debt. *Buchanan*, 776 F.3d at 397. Here, Plaintiff has had the same opportunity to present evidence and has submitted only the letter and

7

a declaration stating that *she* interpreted the letter to mean that Defendant could sue to recover the debt.

Plaintiff's failure to submit evidence outside of the dunning letter and her declaration does not necessarily doom her claim; her own subjective interpretation of the letter theoretically could comport with how the least sophisticated consumer would interpret the letter. But that is not the case here, because Defendant's letter included the following sentence:

> We cannot sue to collect this debt and providing a partial payment may revive the creditor's ability to sue to collect the balance.

The first seven words of that sentence are sufficient to defeat Plaintiff's claim. Defendant discloses in plain terms that it cannot enforce the debt in court. Plaintiff responds that this sentence is ineffective as a disclosure, because it contradicts Defendant's use of the phrase "Settlement Offer" and the words "settlement" and "settle." Dkt. 12, Pg. ID 84-87.

Plaintiff's argument assumes a particular understanding of the word "settle" which does not take into account the broader context of the letter. As the *Buchanan* dissent noted, there are "many different meanings of the word 'settle'—many of which have nothing to do with lawsuits." *Buchanan*, 776 F.3d at 401 (Kethledge, J., dissenting). It is certainly true that the use of "Settlement Offer", "settlement," and "settle"—alone—might lead the least sophisticated consumer to believe that the creditor could enforce the debt in court; that is the position the *Buchanan* majority

8

took based on the facts in the case. But that understanding of the term is less reasonable when the letter from the creditor (or, here, the creditor's debt collector) says in no uncertain terms that the letter's sender cannot sue on the debt. Plaintiff is arguing that the appearance of the word "settle" and its other variations would cause the least sophisticated consumer to interpret a letter that says "we cannot sue to collect this debt" to mean that the sender *could* sue to collect the debt. Here, Defendant's added statement not only discloses that it cannot sue on the debt, but also prevents any potential confusion over whether Defendant's use of "settle" refers to litigation. Considering the letter as a whole, Plaintiff's interpretation is a bizarre, idiosyncratic, and nonsensical reading of the term. Her interpretation is not consistent with how the least sophisticated consumer would interpret the letter, and thus falls outside the FDCPA's scope of protection. Defendant's use of "settle" and its variations, when coupled with its disclosure that it could not sue to enforce the debt, would not mislead the least sophisticated consumer.

> b. *"May" as misleading*

Plaintiff also argues that Defendant's use of the word "may" in the warning that a partial payment would revive Sprint's right to sue on the debt is misleading because that word suggests that it was only a possibility that a partial payment would revive Sprint's right to sue, when in fact a partial payment would certainly revive it. Dkt. 12, Pg. ID 88. Plaintiff then block-quotes *Buchanan* and bolds the sentences

> The general rule in Michigan is that partial payment restarts the statute-of-limitations clock, giving the creditor a new opportunity to sue for the full debt. *See [Yeiter v. Knights of St. Casimir Aid Soc'y* 461 Mich.

9

> 493, 497 (2000)]. As a result, paying anything less than the settlement offer exposes a debtor to substantial new risk.

to support her assertion that a partial payment would "definitely" revive Sprint's right to sue. *Id.*

Plaintiff again ignores the Sixth Circuit's use of the word "general." In fact, *Yeiter* (the case *Buchanan* cites for support on this point) recognizes that a partial payment does *not* revive a creditor's right to sue if the payment "is accompanied by a declaration or circumstance that rebuts the implication that the debtor by partial payment admits the full obligation." 461 Mich. at 497. So a partial payment itself does not always revive the creditor's right to sue; revival depends on whether the debtor states that she does not admit the full obligation. In light of the above case law, Defendant's use of the word "may" was not misleading.

Plaintiff's position also implicates debt collectors' concern over being required to provide legal advice to those from whom they seek to collect unpaid debts. In *Buchanan*, the majority found unpersuasive the defendant's argument that, if the court held that there was a valid FDCPA claim when a dunning letter omits any reference to a partial payment reviving the creditor's right to sue, debt collectors would in effect be required to provide legal advice to debtors. *Buchanan*, 776 F.3d at 397. In rejecting that argument, the majority noted that "if a debt collector is unsure about the applicable statute of limitations, it would be easy to include general language about that *possibility*, [thus] correcting any possible misimpression by unsophisticated consumers without venturing into the realm of legal advice. *Buchanan*, 776 F.3d at 397 (internal citations and quotations omitted) (emphasis

added). Defendant did exactly that; its use of the word "may" accurately reflects Michigan law, steers clear of providing legal advice, and avoids misleading the least sophisticated consumer.

In the context in which they were made, Defendant's affirmative disclosures are sufficient to avoid misleading the least sophisticated consumer. Defendant's motion with respect to Count I is therefore **GRANTED**.

## IV. CONCLUSION

For the reasons outlined above, Defendant's Motion is **GRANTED IN PART AND DENIED IN PART**. Pursuant to 28 U.S.C. § 1367(c)(3), Plaintiff's remaining claims are **REMANDED** to state court.

**SO ORDERED.**


Dated:  November 1, 2016              s/Terrence G. Berg
                                      TERRENCE G. BERG
                                      UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on November 1, 2016, using the CM/ECF system, which will send notification to all parties.

                                      s/A. Chubb
                                      Case Manager